IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONNIE E. YANT, et al., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08-77C |
| | ) | (Senior Judge Hodges) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

PATRICIA M. McCARTHY
Assistant Director

DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

RANEY IRWIN
Attorney
Department of Veterans Affairs
Regional Counsel's Office
3322 West End Avenue, Suite 509
Nashville, Tennessee 37203

August 12, 2008

MOTION

Pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court dismiss the complaint filed by plaintiffs, Connie E. Yant et al., for lack of subject matter jurisdiction.[1] In support of this motion, we rely upon the following brief and the accompanying declaration of Miriam L. Burks ("Burks Decl."), which is attached as Exhibit A.

BRIEF

STATEMENT OF THE ISSUE

Does the Court possess subject matter jurisdiction to entertain the complaint, when the money-mandating statute invoked by plaintiffs, the Equal Pay Act, does not apply to the claims asserted in this case, which are based upon pay disparities between two groups of employees that contain substantial numbers of men and women?

STATEMENT OF THE CASE

A. Nature Of The Action

Plaintiffs are nurse practitioners who are current or former employees of the United States Department of Veterans Affairs ("VA") in the Tennessee Valley Healthcare System. Compl. ¶ 1. Plaintiffs allege that the VA has violated the Equal Pay Act, 29 U.S.C. § 206(d), by paying nurse practitioners pursuant to a salary scale that is lower than the salary scale that the VA uses for physician assistants. Compl. ¶¶ 16-17, 30. Plaintiffs allege further that nurse practitioner and physician assistant positions are fungible, but that nurse practitioners are "predominantly" female and physician assistants are "predominantly" male. Compl. ¶¶ 3, 13-18.

[1] The Court's July 21, 2008 Order asked the parties to "address issues related to jurisdiction." During the July 25, 2008 status conference, the Court directed counsel for defendant to raise the jurisdictional issues in the context of a RCFC 12(b)(1) motion to dismiss, rather than a RCFC 56 motion for summary judgment, even though defendant filed its answer on May 1, 2008.

B. Jurisdictional Facts For Purposes Of Our Rule 12(b)(1) Motion

The VA's Tennessee Valley Healthcare System has consisted of two hospitals located in Nashville and Murfreesboro and several outpatient clinics. Burks Decl. ¶ 3. There are 69 nurse practitioners and 20 physician assistants located throughout the Tennessee Valley Healthcare System. Id. ¶¶ 5-6. Of the 69 nurse practitioners, 55 are female (79.7 percent) and 14 are male (20.3 percent). Id. ¶ 5. Of the 20 physician assistants, eight are female (40.0 percent) and 12 are male (60.0 percent). Id. ¶ 6. The number of male and female nurse practitioners and the number of male and female physician assistants has remained nearly constant since April 2007, id. ¶¶ 4-6, when plaintiffs initiated the litigation. The VA pays male nurse practitioners and female nurse practitioners pursuant to the same salary scale for nurse practitioners without regard to gender. Id. ¶ 7. The VA pays male physician assistants and female physician assistants pursuant to the same salary scale for physician assistants without regard to gender. Id. ¶ 8.

ARGUMENT

"Differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by" the Equal Pay Act. 109 Cong. Rec. 9209 (1963) (statement of Rep. Goodell). Yet, this is precisely the sort of claim that plaintiffs assert in this case. The question of whether the Equal Pay Act applies to a case such as this one is an important legal question of first impression for the Court. Although this Court has seen its share of Equal Pay Act cases over the years, some with claims that are similar to the one asserted in this case, the Court always has assumed that jurisdiction exists without any briefing or argument concerning the issue. We therefore bring this motion to ask the Court to address, for the first time, whether the Equal Pay Act applies to a claim by one group of employees (nurse practitioners) that are paid less than another group of employees (physician assistants), when

both groups include substantial numbers of both women and men. The legislative history persuasively demonstrates that the Equal Pay Act does not apply to plaintiffs' claim.

## I. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RCFC 12(B)(1) BECAUSE THE EQUAL PAY ACT DOES NOT APPLY IN THIS CASE

### A. The Court's Jurisdiction Is Limited

This Court is a court of limited jurisdiction. Brown v. United States, 105 F.3d 621, 623 (Fed. Cir. 1997). Congress created the Court to permit "'a special and limited class of cases' to proceed against the United States." Hercules Inc. v. United States, 516 U.S. 417, 423 (1996) (quoting Tennessee v. Sneed, 96 U.S. 69, 75 (1878)). The Court "'take[s] cognizance only of those claims which by the terms of some act of Congress are committed to it.'" Hercules, 516 U.S. at 423 (quoting Thurston v. United States, 232 U.S. 469, 476 (1914)). The jurisdiction of the Court of Federal Claims depends upon, and is circumscribed by, the extent to which Congress has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976).

The Tucker Act is the "primary statute" governing the jurisdiction of the Court. Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir. 2002). The Tucker Act provides:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act "does not create any substantive right enforceable against the United States for money damages." Testan, 424 U.S. at 398. Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." Loveladies Harbor, Inc. v. United States, 27 F.3d 1545, 1554 (Fed. Cir. 1994).

The plaintiffs bear the burden of establishing jurisdiction by a preponderance of the evidence. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988). Plaintiffs invoke the Court's Tucker Act jurisdiction and rely upon the Equal Pay Act as a money-mandating statute. Compl. ¶ 6. The Court does not possess subject matter jurisdiction to entertain the complaint, however, because the Equal Pay Act does not apply in this case.

B. The Equal Pay Act Does Not Apply To Pay Disparities Between Groups Of Employees That Contain Substantial Numbers Of Both Men And Women

"Democracy bleeds a little each time those who champion it stand idly by in the face of discrimination." 109 Cong. Rec. 9195 (1963) (statement of Rep. Powell). Motivated by these noble words and a desire to remedy centuries of gender-based discrimination, Congress passed the Equal Pay Act of 1963. Pub. L. No. 88-38, § 3, 77 Stat. 56, 56-57 (1963); see also generally, WILLIAM SHAKESPEARE, HAMLET act 1, sc. ii, ln. 146 ("Frailty, thy name is woman!").

The Equal Pay Act provides, in relevant part:

> (d) Prohibition of sex discrimination.
>
> (1) No employer having employees subject to any provisions of this section[[2]] shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1).

[2] The definition of "employee" includes most Federal workers. See 29 U.S.C. § 203(e)(2).

To establish a prima facie case under the Act, plaintiffs have the burden of proving that their (1) employer pays them less in wages than it pays to employees of the opposite sex, (2) for work that requires equal skill, effort and responsibility, and (3) for work that is performed under similar conditions. See Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974); Behm v. United States, 68 Fed. Cl. 395, 399 (2005); Lissak v. United States, 49 Fed. Cl. 281, 284 (2001). The question of whether female plaintiffs are performing work that is similar to the work performed by male employees – an essential element of plaintiffs' prima facie case – requires a proper comparison. See Hofmister v. Miss. State Dep't of Health, 53 F. Supp. 2d 884, 891 (S.D. Miss. 1999) ("In order to establish a prima facie case, the plaintiffs must show that they were paid lower wages than a male comparator for equal work, and the male job comparator must be properly selected.") (citing Strag v. Bd. of Trustees, 55 F.3d 943, 950 (4th Cir. 1995) (holding that an Equal Pay Act plaintiff must select an appropriate comparator)); Arthur v. College of St. Benedict, 174 F. Supp. 2d 968, 976 (D. Minn. 2001) (similar).

For example, one job classification comprised entirely of female employees (such as "female packager"), may be compared properly to another job classification comprised entirely of male employees (such as "male packager"), who perform the same work. See EEOC v. Madison Community Unit School Dist., 818 F.2d 577, 585 (7th Cir. 1987) ("An employer cannot divide equal work into two job classifications that carry unequal pay, forbid women to compete for one of the classifications, and defend the resulting inequality in pay between men and women by reference to a 'factor other than [the] sex' of the employees."); accord Schulte v. New York, 533 F. Supp. 31, 39 (E.D.N.Y. 1981) (collecting cases); 109 Cong. Rec. 9196 (1963) (statement of Rep. Frelinghuysen) ("For example, a plant may have one rate for a classification such as male selector and packager and another for the classification female selector and packager. Yet

both are doing the same job on the same assembly line. Such discrimination would be a violation. As another example, the classification names may not match – there would be male packagers and female selectors, nonetheless the work the two groups perform is identical in every respect. This too, would be a violation if the men as a group received more pay than the women.").

When one classification comprised of both female and male employees is compared to another job classification comprised of both female and male employees, however, the Court must evaluate whether the Equal Pay Act applies. On the one hand, each group of employees need not be entirely female or entirely male. Beck-Wilson v. Principi, 441 F.3d 353, 362 (6th Cir. 2006) (citing Corning Glass, 417 U.S. at 208). To hold otherwise would allow an employer to hire an insubstantial number of female employees in the higher paying job to circumvent the Equal Pay Act. Id. Hence, the court in Beck-Wilson ruled that the plaintiffs' claims could proceed to trial when only a "small minority" of the opposite gender was in each job classification. See Beck-Wilson, 441 F.3d at 362 (denying VA's motion for summary judgment when only five percent of lower paid nurse practitioners in Ohio were male and 15 percent of the higher paid physician assistants in Ohio were female); see also Peters v. Shreveport, 818 F.2d 1148, 1150-51, 1164-65 (5th Cir. 1987) (affirming judgment in favor of plaintiffs on Equal Pay Act claim that full time police communications officers, who were exclusively women except for a small minority of disabled male workers, were paid lower wages than full time fire communications officers who were exclusively male with but one exception).[3]

[3] In Peters, the court of appeals found that the Equal Pay Act applied, even though the class of full- and part-time police communications officers ("PCOs") included 25 percent males, because half of the PCO males were disabled and thus in the same position as women in the job market, and the other half of the PCO males were not employed on a full-time basis. 818 F.2d at 1165.

On the other hand, the Equal Pay Act does not "extend to claims by one group of employees that they are paid less than another group when each group includes significant numbers from each sex, and there is no claim that members of either sex are treated differently within each classification." Schulte, 533 F. Supp. at 39 (emphasis supplied); accord Arthur, 174 F. Supp. 2d at 976; Hofmister, 53 F. Supp. 2d at 891. In fact, the legislative history of the Equal Pay Act expressly confirms that "[d]ifferences in pay between groups or categories of employees that contain both men and women … are not covered by this act":

> [H]ere are examples and general guidelines as to the intent of Congress in enacting H.R. 6060, the equal-pay-for-women bill:
>
> First. Differences in pay that exist between women alone are not covered by this act.
>
> Second. Differences in pay that exist between men alone are not covered by this act.
>
> Third. Differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by this act.

109 Cong. Rec. 9209 (1963) (statement of Rep. Goodell); accord 109 Cong. Rec. 9196 (1963) (statement of Rep. Frelinghuysen) ("Nothing in this bill prohibits discrimination in pay strictly between men or strictly between women. Discrimination that operates against both men and women is not prohibited.").[4] Accordingly, courts have concluded that the Equal Pay Act was not "intended to address the situation where the employer pays different wages to two different job classifications, each of which include both men and women." Schulte, 533 F. Supp. at 38; accord Hofmister, 53 F. Supp. 2d at 891 & n.13 ("The legislative history of the [Equal Pay Act] shows that differences in pay between groups or categories of employees that contain both men

---

[4] The floor debate in the House of Representatives is significant because the House rejected the equal pay bill that was passed by the Senate on May 17, 1963 (S. 1409), and the House passed a substitute equal pay bill on May 23, 1963 (H. 6060), which was accepted by the Senate without further debate on May 28, 1963. 109 Cong. Rec. 8916, 9217-18, 9761-62 (1963).

and women within each group or category are not covered by the [Act]."); see also Peters, 818 F.2d at 1164 ("[T]he Equal Pay Act was intended to correct sexual discrimination in the payment of wages; the Act was not intended to subject all job classification and salary plans in commerce to an inspection by the federal judiciary.").

In Schulte, the plaintiffs alleged that the Equal Pay Act had been violated because female social workers were paid less than male psychologists by the State of New York. 533 F. Supp. at 38. The district court granted summary judgment against the plaintiffs, however, "[b]ecause there is such a substantial representation of the 'minority sex' within each job classification, . . . [such] that even if psychologists and social workers perform identical work, the fact that they are paid different salaries does not establish sex discrimination." Id. The Schulte court explained that it "place[d] considerable emphasis upon the large number of social workers who are male (29%) and the large number of psychologists who are female (31%)." Id. Accordingly, the district court concluded in Schulte that the Equal Pay Act did not apply. Id. at 38-39.

The district court reached a similar result in Arthur, where the plaintiffs alleged that the Equal Pay Act had been violated because female professors at the College of St. Benedict were paid less than male professors at St. John's University. 174 F. Supp. 2d at 976. The district court granted summary judgment against the plaintiffs, however, because "these two classes [of professors] were sufficiently integrated . . . , which consequently undermines any suggestion that the difference in benefits was based on sex." Id. The lower paid professors at the College of St. Benedict were 47 percent male and the higher paid professors at St. John's University were 24 percent female. Id. The Arthur court reasoned that, "at a certain point, when the challenged policy [a]ffects both male and female employees equally, there can be no [Equal Pay Act] violation." Id.; accord Hofmister, 53 F. Supp. 2d at 892 (granting summary judgment against

female plaintiffs because Equal Pay Act did not apply to alleged disparity between lower paid Health Facility Surveyors who were approximately 50 percent male and higher paid Nurse Practitioners who were 90 percent female).

The legislative history and the Schulte, Arthur, and Hofmister cases persuasively demonstrate that the Equal Pay Act does not apply in every case involving a wage disparity between two classes of employees. The appropriate legal test for determining whether the Equal Pay Act applies to a particular case is whether the two classes contain substantial numbers of both men and women. If the two classes contain substantial numbers of both men and women, then the Equal Pay Act does not apply. If the two classes do not contain substantial numbers of both men and women, then the Equal Pay Act applies, and the case should proceed for a merits determination as to whether plaintiffs have established a prima facie case and whether the defendant has established an affirmative defense to liability.

The Schulte, Arthur, and Hofmister cases were decided at the summary judgment stage. The legislative history and the legal principles discussed in these decisions, however, are relevant to the question of jurisdiction, which may be addressed at any stage of the case. Consolidation Coal Co. v. United States, 351 F.3d 1374, 1378 (Fed. Cir. 2003) ("[U]nder federal rules any court at any stage in the proceedings may address jurisdictional issues."). Indeed, the Court has a "special obligation" to assure itself that jurisdiction is proper before it decides that a case may proceed. See Chambers v. United States, 417 F.3d 1218, 1221 (Fed. Cir. 2005) ("the Court of Federal Claims . . . has a special obligation to 'satisfy itself . . . of its own jurisdiction'") (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)). The Court should dismiss the action pursuant to RCFC 12(b)(1) unless the Court is satisfied that jurisdiction is proper. See, e.g., Am. Red Ball Int'l, Inc. v. United States, 79 Fed. Cl. 474, 480 (2007) (granting

RCFC 12(b)(1) motion to dismiss because there was no valid contract and, thus, no Contract Disputes Act jurisdiction).

C. The Question Presented Is A Matter Of First Impression For The Court

The question of whether the Equal Pay Act applies to a case such as this one is a matter of first impression for the Court. We note, however, that in Allison v. United States, 39 Fed. Cl. 471, 474 n.3 (1997), the Court denied our motion for summary judgment in a case involving nurse practitioners and physician assistants in Portland. The Court observed in a footnote that the lower paid nurse practitioners were 76 percent female and the higher paid physician assistants were 75 percent male, but the Court did not consider the question of whether the Equal Pay Act was intended to apply to such a case. Id. In fact, the Allison decision does not refer to the legislative history. See id. The parties in Allison did not brief the issue of whether the Equal Pay Act applied, the Court did not resolve it, and the case settled. [5]

The Court addressed similar claims in Behm, and Lissak, which involved Equal Pay Act claims based upon the pay disparity between two gender-neutral salary scales. Behm, 68 Fed. Cl. at 402 (two salary scales for field office managers and HQ managers); Lissak, 49 Fed. Cl. at 286 (two salary scales for air traffic controllers based upon date of hire). In Behm, the plaintiffs conceded that "there are male [managers] who were disadvantaged by the plan and rules because they held [certain] positions, and female [managers] who benefited because they held [other]

[5] During a recent status conference, the Court noted that a trial has been scheduled in Cooke v. United States, No. 06-748, an Equal Pay Act case set for trial before Judge Wheeler. The Cooke case involves allegations of gender discrimination within a single class of four directors who are employed in the National Transportation Safety Board's Office of Surface Transportation Safety, where one female director (the plaintiff) alleges that she was paid less than the three other male directors. Cooke v. United States, 77 Fed. Cl. 173, 174 (2007) (denying motion to dismiss Equal Pay Act claim for lack of jurisdiction because plaintiff's FLSA claim in district court did not arise from the same operative facts and sought different relief). The Cooke case involved allegations of gender discrimination within a single class, not gender discrimination between two classes of employees with substantial numbers of men and women. Hence, any finding of jurisdiction in the Cooke case has no bearing on whether the Equal Pay Act applies in this case.

field positions." Behm, 68 Fed. Cl. at 402. The Lissak case involved similar circumstances. Lissak, 49 Fed. Cl. at 286. The Court granted summary judgment against the plaintiffs in Behm and Lissak based upon the Government's affirmative defense that the pay differential was caused by a "factor other than sex." Behm, 68 Fed. Cl. at 402; Lissak, 49 Fed. Cl. at 286, 289. We note, however, that the parties in Behm and Lissak did not raise, and the Court did not consider, whether the Equal Pay Act applied to such a case in the first instance.

The United States Court of Appeals for the Federal Circuit has not addressed the issue of whether the Equal Pay Act applies to claims based upon a pay differential between two classes of employees that contain substantial numbers of both men and women. The Court's prior decisions in Allison, Behm, and Lissak did not address this issue either; however, the facts recited in these three decisions suggest that the cases could have been dismissed for lack of subject matter jurisdiction if the issue had been litigated.

D. The Court Should Dismiss Plaintiffs' Complaint For Lack Of Jurisdiction

In this case, plaintiffs are nurse practitioners in Tennessee who are attempting to compare their pay to physician assistants in Tennessee. For purposes of this motion only, we assume that the nurse practitioners and the physician assistants are doing equal work under similar job conditions and that the nurse practitioners have been paid less than the physician assistants. Yet, the lower paid nurse practitioners are 20.3 percent male (including four of the plaintiffs) and, even more significantly, the higher paid physician assistants are 40 percent female. Burks Decl. ¶¶ 5-6. This case does not involve a token few members of the opposite sex; rather, there are substantial numbers of both men and women in each classification. Id. Furthermore, there is no allegation that female nurse practitioners are treated differently from male nurse practitioners; nor is there any allegation that female physician assistants are treated differently from male

physician assistants. The Equal Pay Act was never intended to, and does not, apply to such a claim. Schulte, 533 F. Supp. at 39; Arthur, 174 F. Supp. 2d at 976; Hofmister, 53 F. Supp. 2d at 891; 109 Cong. Rec. 9196, 9209 (1963) (statements of Rep. Frelinghuysen and Rep. Goodell).

The Equal Pay Act does not apply in this case. Plaintiffs do not rely upon any other money-mandating statute. Accordingly, the Court does not possess jurisdiction to entertain the complaint.

## CONCLUSION

For these reasons, we respectfully request that the Court dismiss the complaint for lack of subject matter jurisdiction.

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/Patricia M. McCarthy
PATRICIA M. McCARTHY
Assistant Director

s/Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, DC 20530
Tel: (202) 353-9303

Attorneys for Defendant

OF COUNSEL:

RANEY IRWIN
Attorney
Department of Veterans Affairs
Regional Counsel's Office
3322 West End Avenue, Suite 509
Nashville, Tennessee 37203

August 12, 2008

CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2008, a copy of foregoing "DEFENDANT'S RULE 12(b)(1) MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Douglas G. Edelschick