# In the United States Court of Federal Claims

No. 08-77C
(Filed January 12, 2009)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * * * *  * | |
| | * Civilian pay; RCFC 12(b)(1) |
| **CONNIE E. YANT,** *et al.,* | * motion to dismiss for lack of |
| | * subject matter jurisdiction based |
| Plaintiffs, | * on gender balance of preferred |
| | * class; RCFC 56 motion for |
| v. | * summary judgment; Equal Pay |
| | * Act, 29 U.S.C. § 206(d)(1) |
| **THE UNITED STATES,** | * (2000); consent to motion for |
| | * summary judgment under RCFC |
| Defendant. | * 12(b)(1) to address claim on |
| | * merits. |
| * * * * * * * * * * * * * * * * * * * * * *  * | |

John F. Burke, III, Cleveland, OH, for plaintiffs.

Douglas G. Edelschick, Washington, DC, with whom was Assistant Attorney General Gregory G. Katsas, for defendant. Raney Irwin, Department of Veterans Affairs, Regional Counsel's Office, Nashville, TN, of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER,** Judge.

This case is before the court after argument on defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, pursuant to RCFC 56 for summary judgment. Plaintiffs seek an award of damages under the Equal Pay Act, 29 U.S.C. § 206(d)(1) (2000) (the "EPA"), based on allegations that as federal employees they receive lower wages due to their gender. Defendant has moved to dismiss the complaint on the ground that jurisdiction is not established or for judgment in its favor because the EPA does not apply to groups of employees with a substantial number of both men and women.

## BACKGROUND

Connie E. Yant, on behalf of other similarly situated individuals ("plaintiffs"), filed suit on March 6, 2008. Defendant filed its Answer and Affirmative Defense 1/ on May 1, 2008. On August 12, 2008, defendant filed a motion to dismiss the complaint based on subject matter jurisdiction, 2/ plaintiffs replied, and the motion was fully briefed on October 1, 2008. This case had been transferred from Senior Judge Robert H. Hodges, Jr., on September 19, 2008. By order entered on October 15, 2008, this court ordered oral argument on defendant's motion to dismiss. After orally withdrawing its motion to dismiss during argument on October 20, 2008, defendant filed on November 5, 2008, a reframed motion to dismiss under RCFC 12(b)(1) or, in the alternative, a motion for summary judgment pursuant to RCFC 56. Plaintiffs responded on December 2, 2008, and defendant replied on December 9, 2008. The parties declined an opportunity for further oral argument.

## FACTS

The following facts are derived from plaintiffs' complaint and defendant's proposed findings of uncontroverted fact. 3/ Unless otherwise noted, all facts are construed in the light most favorable to plaintiffs.

Plaintiffs, current and former Nurse Practitioners ("NPs"), work throughout Tennessee and are employed by the United States Department of Veterans Affairs (the "VA") in the Tennessee Valley Healthcare System (the "TVHS").

At least since 2004, NPs working for the VA in the TVHS have been compensated at a lower rate than Physician Assistants ("PAs") working in the same system. NPs and PAs perform duties of equal skill, responsibility, and effort; and the VA cannot justify the wage differential based on a seniority system, merit system, or any system that measures quality or quantity of production. The only difference between PAs and NPs working in the TVHS

---

1/ Defendant claims that the VA's salary scales for Physicians Assistants and Nurse Practitioners compensate employees in compliance with federal law.

2/ Judge Hodges had entered an order on July 21, 2008, requiring the parties to address jurisdiction. Thereafter, he directed defendant to file a motion pursuant to RCFC 12(b)(1), although defendant previously had answered. See Def.'s Br. filed Aug. 12, 2008, at 1 n.1.

3/ Plaintiffs agree with Defendant's Proposed Findings of Uncontroverted Fact. Pls.' Br. filed Dec. 2, 2008, at 3 n.1.

is that NPs are "predominantly female" and PAs are "predominantly male," and the two job categories are compensated at different levels.  Compl. filed Mar. 6, 2008, ¶¶ 3, 13, 24.

Plaintiffs allege, based on the foregoing facts, that the difference in compensation is unjustified and is in violation of the EPA.

Defendant has illuminated the gender composition of PAs and NPs in the TVHS.  As part of its motion for summary judgment, defendant attached a Declaration from Miriam L. Burks, the Human Resources Specialist in the Murfreesboro, Tennessee office of the VA in the TVHS.  Ms. Burks set forth the gender composition in the NP and PA groups working for the VA in Tennessee from 2004 to 2008.  As of January 2004, 78.4% (29 of 37) of NPs were female, and 21.6% (8 of 37) were male.  As of January 2005, 79.5% (35 of 44) of the NPs were female, while 20.5% (9 of 44) were male.  As of January 2006, 79.2% (38 of 48) of the NPs were female, and 20.8% (10 of 48) were male.  As of April 2007, 80.6% (54 of 67) of NPs were female, and 19.4% (13 of 67) of NPs were male.  As of February 2008, 78.9% (56 of 71) of NPs were female, and 21.1% of NPs were male (15 of 71).  As of July 2008, 79.7% (55 of 69) of NPs were female, and (14 of 69) 20.3% of NPs were male.  Ms. Burks also provided the gender composition of PAs working for the TVHS during that same time period: in January 2004 the PAs were 42.1% (8 of 19) female and 57.9% (11 of 19) were male.  In January 2005 44.4% (8 of 18) of the PAs were female, and 55.6% (10 of 18) were male.  In  January 2006 41.2% (7 of 17) PAs were female, and 58.8% (10 of 17) were male.  In April 2007 42.1% (8 of 19) were female, and 57.9% (11 of 19) were male.  In February 2008 PAs were 40% (8 of 20) female, and 60% (12 of 20) were male, and in July 2008 the composition remained the same – PAs were 40% female (8 of 20) and 60% male (12 of 20).

Plaintiffs allege that the VA intentionally, or recklessly, has discriminated against NPs because they are predominantly female.  As a result, plaintiffs charge that they have lost compensation, fringe benefits, and future earnings and suffered from loss of reputation and self-esteem, humiliation, and embarrassment – all attributable to the TVHS's discrimination and plaintiffs' effort to pursue legal remedies through their lawsuit.

## DISCUSSION

I.  Whether defendant's challenge goes to the subject matter jurisdiction of the United States
        Court of Federal Claims

1.  Standard of reivew

Jurisdiction must be established before the court may proceed to the merits of a case.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998).  Any party may

challenge, or the court may raise *sua sponte*, subject matter jurisdiction at any point in a proceeding, even upon appeal. Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006). Once the court's subject matter jurisdiction is put into question, it is "incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction. [The plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Reynolds v. Army and Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988); McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Myers Investigative & Sec. Servs., Inc. v. United States, 275 U.S. 1366, 1369 (Fed. Cir. 2002). Federal courts are presumed to lack jurisdiction unless the record affirmatively indicates the opposite. Renne v. Geary, 501 U.S. 312, 316 (1991).

Both the Tucker Act, 28 U.S.C. § 1491(a)(1) (2000), and the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (2000), define the jurisdictional reach of the Court of Federal Claims. The Tucker Act "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States, and . . . waives the Government's sovereign immunity for those actions." Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc); see also Emery Worldwide Airlines, Inc. v. United States, 49 Fed. Cl. 211, 220, aff'd, 264 F.3d 1071, 1080 (Fed. Cir. 2001) (holding that United States Postal Service is a "federal agency" within meaning of Administrative Disputes Resolution Act, and, thus, jurisdiction over it exists under Tucker Act). In certain actions against the United States for less than $10,000.00, the Little Tucker Act grants concurrent jurisdiction to United States district courts and the Court of Federal Claims. See 28 U.S.C. § 1346(a)(2).

In Fisher the United States Court of Appeals for the Federal Circuit sought to clarify Tucker Act jurisprudence, which had blended the questions of the Court of Federal Claims' jurisdictional grant with the merits of the claim. "This mixture has been a source of confusion for litigants and a struggle for courts." 402 F.3d at 1172. As the Federal Circuit elucidated, the Tucker Act does not provide any substantive causes of action. "[I]n order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." Id.; see also United States v. Mitchell, 463 U.S. 206, 216 (1983).

The Federal Circuit adopted a single-step approach to addressing whether a constitutional provision, statute, or regulation is money-mandating and, therefore, within the jurisdiction of the Court of Federal Claims:

> When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, . . . the trial court at the outset shall determine, either in response to a motion by the Government or *sua*

*sponte* . . . , whether the Constitutional provision, statute, or regulation is one that is money-mandating.

If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course . . . .

If the court's conclusion is that the source as alleged and pleaded is not money-mandating, the court shall so declare, and shall dismiss the cause for lack of jurisdiction, a Rule 12(b)(1) dismissal—the absence of a money-mandating source being fatal to the court's jurisdiction under the Tucker Act.

Fisher, 402 F.3d at 1173.

The Federal Circuit has refined the test for subject matter jurisdiction espoused in Fisher to address the relationship between the nature of a plaintiff's claim and a properly pleaded money-mandating source. The current test, designed to prevent "seriously undermin[ing] Congress's decision to vest the Court of Federal Claims with exclusive jurisdiction over claims [in excess of $10,000] against the United States. . . ," is "a determination that the claim is founded upon a money-mandating source and the plaintiff has made a nonfrivolous allegation that it is within the class of plaintiffs entitled to recover under the money-mandating source." Jan's Helicopter Serv., Inc. v. Federal Aviation Admin., 525 F.3d 1299, 1309 (Fed. Cir. 2008) (affirming U.S. district court's transfer to Court of Federal Claims to assert properly subject matter jurisdiction). Only after this initial inquiry will the court look to "determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits." Id.; see also Greenlee County v. United States, 487 F.3d 871, 876 (Fed. Cir. 2007) ("Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case . . . .").

2. The Equal Pay Act

In 1963, as an amendment to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (2000), Congress enacted the EPA to prevent gender-based wage discrimination. See generally Lissak v. United States, 49 Fed. Cl. 281, 284 (2001) (explicating EPA's history and purpose is to "help eliminate society's age-old belief in the inferiority of women and the economic and social consequences that flowed from that belief."). The EPA forbids employers from discriminating

5

between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).  A plaintiff must establish a prima facie case, after which the burden shifts to defendant.  First, the complainant must show that the employing agency is, or was, inequitably paying wages to employees "'for equal work on jobs the performance of which requires skill, effort, and responsibility, and which are performed under working conditions.'"  Corning Glass Works v. Brennan, 417 U.S. 188, 195 (1974) (quoting 29 U.S.C. §206(d)(1)).  Once the plaintiff overcomes the burden of showing that the employing agency defendant is paying workers of one sex more than workers of the other sex for equal work, the burden shifts to the defendant to establish that the payments in question are justified by any of the four exceptions listed in the EPA.

Defendant's motion to dismiss challenges whether plaintiffs have established a prima facie case under the EPA.  Defendant argues that the gender composition of NPs working for the TVHS, the class of employees asserting the EPA challenge, is too heterogenous to qualify as claimants under the EPA.  Thus, if the EPA does not apply to this case due to excessive gender diversity among the groups of NPs and PAs, the complaint must be dismissed for lack of subject matter jurisdiction.

3.  The gender requirements for a prima facie EPA claim

A group of plaintiffs does not have to be exclusively one gender to attain standing as aggrieved persons under the EPA.  The United States Supreme Court in Corning explicitly held that "[t]o permit the [defendant] to escape [the] obligation [to pay men and women equally under the EPA] by agreeing to allow some women to work [with a group dominated by men] would frustrate, not serve, Congress' ends." 417 U.S. at 208.  No magic threshold or ratio determines whether a mixed-sex group of plaintiffs is protected by the EPA.  In fact, "whether a policy affects both male and female employees to such an extent that an EPA claim would be invalid is a question of fact."  Beck-Wilson v. Principi, 441 F.3d 353, 362 (6th Cir. 2006).

In evaluating the facts of a case, it is important to consider that the purpose of the EPA is to prevent gender-based discrimination.  To that end, "after a certain indefinable

point, the integration within each of the classes compared becomes such that any wage differential is clearly based on a factor other than sex." Hofmister v. Miss. State Dep't of Health, 53 F. Supp. 2d 884, 892 (S.D. Miss. 1999) (quoting Peters v. City of Shreveport, 818 F.2d 1148, 1164 (5th Cir. 1987)). This indefinable point lies somewhere between a group that is predominantly one gender and a group in which the challenged EPA policy affects both men and women equally.  See Allison v. United States, 39 Fed. Cl. 471, 473 (1997) (describing group of NPs comprised of 76% women (19 of 25) and group of PAs comprised of 66% men (10 of 15) as being predominantly female and predominantly male, respectively); see also Beck-Wilson, 441 F.3d at 362 (quoting Arthur v. Coll. of St. Benedict, 174 F. Supp. 2d 968, 976 (D. Minn. 2001) (when challenged policy affects both men and women equally, "there can be no EPA violation"))).

     Plaintiffs' complaint does not specify the gender ratios present in the PA and NP populations at issue.  Plaintiffs describe the NPs as "predominantly and historically male" and the PAs as being equally "predominantly and historically female."  Compl. ¶¶ 13, 16, 19, 30, 31.  While, in Allison, the Court of Federal Claims used the terms "predominantly male" and "predominantly female" to describe groups of NPs and PAs, gender composition was not at issue, and definite numbers underlay the "predominant" description. Allison, 39 Fed. Cl. at 474 n.3.

     Defendant has submitted evidence from Ms. Burks, and plaintiffs agree with her factual assertions.  Ms. Burks declared that between 2004 and 2008 the percentage of male NPs fluctuated between 19.4% and 21.6% (conversely, the number of female NPs fluctuated between 78.4% and 80.6%).  Ms. Burks also declared that between 2004 and 2008 the percentage of female PAs had fluctuated between 40.0% and 44.4% (conversely, the number of male PAs fluctuated between 55.6% and 60%).

     Defendant argues that, even if plaintiffs establish all the elements of a claim under the EPA, plaintiffs do not come within the class of plaintiffs entitled to recover under the EPA. As such, defendant acknowledges that the EPA is a money-mandating statute, but moves for dismissal under 12(b)(1), arguing that under the first prong of the Fisher test the EPA does not apply in this case because there is an insufficient gender imbalance within and between the two job classifications.

     Plaintiffs counter that Fisher sets a low bar for plaintiffs to overcome and supports subject matter jurisdiction in this case.  Pls.' Br. filed Dec. 2, 2008, at 9.  Citing Jan's Helicopter, 525 F.3d 1299, 1309, and Litecubes, LLC v. N. Light Prod., 523 F.3d 1353 (2008), reh'g and reh'g en banc denied, 2008 U.S. App. LEXIS 14170 (Fed. Cir. June 19, 2008), plaintiffs contend that they qualify as a group that satisfies the nonfrivolous

jurisdictional standard espoused in <u>Jan's Helicopter</u> 4/ and that they have made a "non-frivolous allegation that is within the class of plaintiffs entitled to recover under the [EPA]." <u>Id.</u> at 9.  Moreover, as discussed in <u>Litecubes</u>, even if plaintiffs' cause of action were to ultimately fail, "'failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction.'"  <u>Id.</u> at 9-10 (quoting <u>Litecubes</u>, 523 F.3d at 1361).

Without a definitive brightline dictating the acceptable gender composition percentages under the EPA, plaintiffs have not filed a frivolous claim.  Subject matter jurisdiction is determined independently of analyzing whether a plaintiff might ultimately succeed on the merits.  <u>Litecubes</u>, 523 F.3d at 1360.  A plaintiff's unsuccessful cause of action "'does not implicate subject-matter jurisdiction, i.e., the courts' statutory or constitutional *power* to adjudicate the case.'" <u>Id.</u> at 1361(quoting <u>Steel Co.</u>, 523 U.S at 89).  The EPA is a money-mandating statute and is premised on disparate salaries based on gender.  Alleging a violation of the EPA when the two groups are composed entirely of the same sex would be frivolous, complaining that wage disparity between two job classifications that have obvious differences in tasks would be frivolous, and filing a claim under the EPA for a job that pays identically to the preferred class would be frivolous.  However, plaintiffs' complaint alleges a violation of the EPA relating to, at a minimum, two similar classifications that manifest approximately an 80% (female) to 20% gender breakdown in the lower-paid plaintiffs' class and approximately a 60% to 40% (female) gender breakdown in the higher-paid class.  This cannot be considered frivolous under the standard in <u>Jan's Helicopter</u>.

II.  <u>Whether the EPA recognizes disparity that is based on groups reflecting a mixture of the two sexes</u>

1.  <u>Summary judgment standards</u>

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact

_____

4/ <u>Jan's Helicopter</u> elucidated the standard, first articulated in <u>Fisher</u>, for establishing jurisdiction under the Tucker Act.  <u>Jan's Helicopter</u> teaches that jurisdiction is established under the Tucker Act if the plaintiff makes a "nonfrivolous assertion that it is within the class of plaintiffs entitled to recover under [a] money-mandating source. . . ." <u>Jan's Helicopter</u>, 525 F.3d at 1307.  A nonfrivolous assertion requires that (1) the statute, regulation, or constitutional provision asserted in the complaint can be fairly interpreted as mandating compensation by the Federal Government for damage sustained, and (2) the source must be reasonably amenable to the reading that the plaintiff is within the class entitled to recover if all elements of the cause of action are established.  <u>Id.</u>

and that the movant is entitled to judgment as a matter of law." RCFC 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The legal issues before the court may be resolved on summary judgment. Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1243-44 (Fed. Cir. 2007).

"The moving party in a summary judgment motion has the burden to show 'that there is an absence of evidence to support the nonmoving party's case.'" Crown Operations Int'l v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

2. Qualification under the EPA

Defendant argues that the EPA was not intended to address pay disparities in mixed gender groups when the gender diversity includes a "substantial" number of both men and women. Def.'s Br. filed Nov. 5, 2008, at 8.

Defendant offers three cases, Schulte v. New York, 533 F. Supp. 31, 38 (E.D.N.Y. 1981) (granting summary judgment when "there is such a substantial representation of the 'minority sex' within each job classification . . . that even if [the two jobs] perform identical work, [the difference in pay] does not establish sex discrimination."); Hofmister, 53 F. Supp. 2d at 892 (granting summary judgment when lower-paid group was composed of ten men and nine women); Arthur, 174 F. Supp. 2d at 976 (finding that gender distributions of 47% male and 53% female lower-paid class versus 76% male and 24% female higher-paid class "undermines any suggestion that the difference in the benefits was based on sex," and ultimately entering summary judgment for defendant), for the proposition that the EPA does not equalize a pay differential when the two employment classifications contain "substantial" numbers of both men and women and that this case should therefore be decided at the summary judgement stage. See generally Def.'s Br. filed Nov. 5, 2008, at 11, 17. Defendant posits that, although complete diversity is not required, the difference between a "token" number of women and a "substantial" number negates coverage under the EPA and, hence, supports summary judgment for defendant. Id. at 16.

Plaintiffs respond that defendant misinterprets Hofmister and Schulte. Contrary to defendant's argument that Hofmister was decided based on gender make-up, plaintiffs state that the decisive element was that the two groups were not performing equal work. In the same vein, plaintiffs contend that defendant misrepresents Schulte to stand for dismissal based on gender balance, when education and training differences were the decisive factors.

Plaintiffs are correct that the precise holding in Hofmister was that the two groups did not perform equal work, but is incorrect that Hofmister does not support defendant's

9

interpretation.  Plaintiffs in <u>Hofmister</u> were two female Health Facility Surveyors for the State of Mississippi.  Plaintiffs sued under the EPA alleging that they were paid less than male Nurse Practitioners.  Plaintiffs' employment class was composed of ten men and nine women.  The Nurse Practitioner group was composed of two men and eighteen women.  The court in <u>Hofmister</u> awarded summary judgment for defendant primarily because plaintiffs had "failed to demonstrate that they perform work substantially equal to the male job comparators they have selected." 53 F. Supp. 2d at 889-90.  The court then advanced an alternative holding <u>5</u>/ that, even if the work performed by the two groups had been equal, defendant would win on summary judgment because the EPA does not cover situations presenting two groups of mixed-gender employees.  <u>Id.</u> at 891.

Plaintiffs are also correct that the <u>Schulte</u> court found that the two jobs being compared, social workers and psychologists, required different educational backgrounds and professional training. 533 F. Supp. at 38.  Plaintiffs' assertion that this was the predominant reason for awarding summary judgment in the Government's favor is contradicted by the court's approach in <u>Schulte</u>.  The court lucidly attributes equal, or greater, weight to gender composition versus educational background and professional training: "[T]he court places considerable emphasis upon the large number of social workers who are male (29%) and the large number of psychologists who are female (31%) . . . .  Moreover, the educational background and professional training of psychologists and social workers differ." <u>Id.</u>  The court continues to discuss the implications of mixed-gender groups and EPA actions, concluding that the EPA implementing regulation "indicates that the EPA was not intended to extend to claims by one group of employees that they are paid less than another group when each group includes significant numbers from each sex[.]" <u>Id.</u> at 39.

Plaintiffs offer additional support that groups composed of predominantly one sex are sufficient to state a prima facie case under the EPA.  They quote the United States Supreme Court in <u>Corning Glass</u> and the United States Court of Appeals for the Sixth Circuit in <u>Beck-Wilson</u>, quoting <u>Corning Glass</u>, for the proposition that "agreeing to allow some women to work [for the higher-paid predominately male group] would frustrate, not serve, Congress' ends."  Pls' Br. filed Dec. 2, 2008 at 13 (<u>quoting</u> <u>Corning Glass</u>, 417 U.S. at 208).

---

<u>5</u>/ Not withstanding that a non-precedential holding from the United States District Court for the Southern District of Mississippi is not binding on this court, it still may be considered persuasive authority.  <u>See</u> <u>Co-Steel Raritan, Inc. v. Int'l Trade Comm.</u>, 357 F.3d 1294, 1307 (Fed. Cir. 2004) (explicating that dicta, while not precedential, can be persuasive, but not binding, authority).

The EPA was established to protect against pay discrimination based on gender.  Rep. Goodell, the "principal exponent" of the bill establishing the EPA, County of Wash. v. Gunther, 452 U.S. 161 171 (1981), presented "examples and general guidelines as to the intent of Congress in enacting H.R. 6060, the equal-pay-for-women bill."  109 Cong. Rec. 9209 (1963) (statement of Rep. Goodell).  The third of fifteen reads:  "Differences in pay between groups or categories of employees that contain both men and women within the group or category are not covered by" the EPA.  Id.; see also  Hofmister, 53 F. Supp. 2d at 892 n.13.  Maintaining the spirit, and narrow focus of the EPA, the Corning Glass Court expanded the narrow scope of Rep. Goodell to frustrate avoidance of EPA liability by "agreeing to allow some women to work" in the higher-paid class in order to help protect groups from what would otherwise be a loophole in enforcement of the EPA and to avoid frustrating Congress' ends.  417 U.S. at 208.   Whether the imprecise division between a point where courts should protect groups from being subjected to attempts to avoid EPA liability through a loophole and a point where employees are part of a mixed-gender group not covered by the EPA creates a contested issue of fact is the focus of the parties' arguments.

No judicial brightlines have been drawn for the minimum gender ratio that will defeat the protection afforded by the EPA.  Defendant agues that a "substantial number" of men in the lower-paid class will defeat the EPA, while plaintiffs argue that a group "predominantly" made of one sex is sufficient to proceed past the summary judgment stage.  Following trial, the court in Hofmister made the cogent observation that "'after a certain indefinable point, the integration within each of the classes compared becomes such that any wage differential is clearly based on a factor other than sex.'" 54 F. Supp. 2d at 892 (quoting Peters, 818 F.2d at 1164).  As the Schulte court on summary judgment described 29% male participation of the lower-paid class as being a "large number" and a female population of 31% in the higher-paid class as being a "large number," 533 F. Supp. at 38, this court finds that the numbers present in this case, 20% and 40% respectively, suffice to deny liability on summary judgment.

Plaintiffs' class, as of July 2008, is composed of essentially 80% females and 20% males, while the higher-paid PAs are 40% female and 60% male.  This has been the approximate distribution since 2004.  No suggestion is present, nor do plaintiffs allege, that the agency hired token men as NPs or token women as PAs to avoid a cause of action under the EPA.  This court holds that the EPA does not contemplate mixed-gender groups consisting of a substantial 20% participation of the putatively preferred sex in the lower-paid category and a substantial 40% participation of the putatively disadvantaged sex in the higher-paid category.  Any other approach to quantifying the ratio of females to males sponsors an application of the EPA to mixed groups.  The record on summary judgment presents a situation of two job classifications staffed by both men and women with

substantial participation of both sexes in each.  The EPA was not intended to remedy such a diffuse situation; rather, the EPA addresses unequal pay when the groups are not mixed. Plaintiffs do not present that circumstance. Therefore, defendant's motion for summary judgment is granted.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion to dismiss under RCFC 12(b)(1) is denied and defendant's motion for summary judgment under RCFC 56 is granted because plaintiffs do not qualify for coverage under the EPA.  The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

No costs.


s/ Christine O.C. Miller

_____

**Christine Odell Cook Miller**
Judge